IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 06-447-1 |
|  | : |  |
| v. | : |  |
|  | : |  |
| BRIAN J. NEWMARK | : |  |
| Defendant | : |  |

**M E M O R A N D U M**

PRATTER, J.                                                                                                                    MAY 21, 2008

**PROCEDURAL BACKGROUND**

On October 24, 2007, a federal jury convicted Brian J. Newmark of one count of wire fraud (Count One of the Indictment), one count of mail fraud (Count Three), and one count of making a false statement under oath (Count Five). The jury acquitted Mr. Newmark on one count of mail fraud (Count Four), and the Court dismissed one count of wire fraud (Count Two) following the conclusion of the Government's case.[1] The underpinnings of the charges involved investment and estate planning products that Mr. Newmark and people he employed sold to two elderly brothers, Arthur and Thomas Walker.

On April 4, 2008, the Court granted in part Mr. Newmark's motion under Rule 29 of the Federal Rules of Criminal Procedure, and entered a judgment of acquittal in his favor as to Counts Three and Five. United States v. Newmark, Crim. No. 07-447, 2008 U.S. Dist. LEXIS 27460 (E.D. Pa. Apr. 4, 2008). The Court denied Mr. Newmark's Rule 29 motion as to Count One, and denied his motions under Rules 33 and 34. Thereafter, Mr. Newmark timely moved the

---

[1] Mr. Newmark was tried along with co-defendant John Wight. The jury acquitted Mr. Wight on Counts One and Three, but was not able to reach a decision with respect to Mr. Wight on Count Four. On April 4, 2008, the Court granted Mr. Wight's Rule 29 motion, and entered a judgment of acquittal as to Mr. Wight on Count Four.

Court to reconsider its decision with respect to Count One, and requested the Court to enter a judgment of acquittal or grant him a new trial as to that Count.  In his motion, Mr. Newmark argues that (1) the Third Circuit Court of Appeals' holdings in <u>United States v. Pearlstein</u>, 576 F.2d 531 (3d Cir. 1978), and <u>United States v. Dobson</u>, 419 F.3d 231 (3d Cir. 2005), require the Court to vacate his conviction on Count One pursuant to Rule 29(a) or grant a new trial under Rule 33; and (2) he is entitled to a new trial under Rule 33 as a matter of fundamental fairness.  The Government opposes Mr. Newmark's motion.  For the reasons discussed below, Mr. Newmark's Motion for Reconsideration will be denied.

**LEGAL STANDARD**

While the Federal Rules of Criminal Procedure do not contain a rule specifically discussing motions for reconsideration, our Local Rule of Criminal Procedure 1.2 adopts for use in criminal cases Local Rule of Civil Procedure 7.1(g), which states that "motions for reconsideration or reargument shall be served and filed within ten (10) days after the entry of the judgment, order, or decree concerned."  Absent guidance under the criminal rules, the Court looks to the jurisprudence under Federal Rule of Civil Procedure 59(e) for guidance in considering Mr. Newmark's motion.  <u>United States v. Lee</u>, 82 F. Supp. 2d 389, 390-91 n. 4 (E.D. Pa. 2000) (<u>citing</u> <u>Rankin v. Heckler</u>, 761 F.2d 936, 942 (3d Cir. 1985) ("Regardless how it is styled, a motion filed within ten days of entry of judgment questioning the correctness of the judgment may be treated as a motion . . . under Rule 59(e).")).  The purpose of a motion for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure is to "correct manifest errors of law or fact or to present newly discovered evidence."  <u>Harsco Corp. v. Zlotnicki</u>, 779 F.2d 906, 909 (3d Cir. 1985).  A motion for reconsideration is not to be used as a means to

reargue a case or to ask a court to rethink a decision it has made. Armstrong v. Reisman, No. 99-4188, 2000 U.S. Dist. LEXIS 3119, at *9 (E.D. Pa. March 7, 2000). It is not a substitute for an appeal. See Waye v. First Citizen's Nat'l Bank, 846 F. Supp. 310, 314 (M.D. Pa. 1994). A conventional motion for reconsideration must rely on at least one of three grounds: 1) intervening change in controlling law, 2) availability of new evidence not previously available, or 3) need to correct a clear error of law or prevent manifest injustice. N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995); Waye, 846 F. Supp. at 313-14.

**DISCUSSION**

Mr. Newmark's motion does not cite the standard under which the Court reviews a motion for reconsideration, and, accordingly, does not cite which, if any, of the three bases for seeking reconsideration cited above justify his current request. However, Mr. Newmark neither cites any change in controlling law nor refers the Court to any new evidence. Arguably, however, he has presented at least some aspects of his motion in order "to correct a clear error of law or prevent manifest injustice," at least as he perceives the status of the case. The Court will consider whether the issues raised in Mr. Newmark's motion pass muster on that basis.

**I.   SUFFICIENCY OF EVIDENCE AS TO COUNT ONE UNDER RULE 29 OR RULE 33**

The Indictment charged Mr. Newmark and Mr. Wight with devising and/or participating in a scheme to defraud the Walker brothers by misrepresenting themselves as lawyers in order to convince the Walkers to purchase high-priced annuity products. Neither Mr. Newmark nor Mr. Wight is, or ever was, a lawyer. Count One of the Indictment charged Mr. Newmark with violations of the federal wire fraud statute, 18 U.S.C. § 1343. To sustain a conviction for wire fraud, the Government must establish (1) the existence of a scheme to defraud; (2) the use of

interstate wire facilities, "for the purpose of executing" the fraudulent scheme; and (3) culpable participation by the defendant, that is, participation by the defendant with specific intent to defraud.

The Indictment described the charged scheme as follows:

> Defendant **BRIAN J. NEWMARK** designed and implemented, and defendant **JOHN J. WIGHT** implemented, various sales techniques and devices, including oral presentations, documents, letters and business cards, for the purpose of fostering the false impression that defendants were attorneys, or in the employ of an attorney, in order to gain the trust of [the Walkers] and to sell them tax deferred annuities.

(Indictment at 2 ¶ 8.B.)

Mr. Newmark argues that his wire fraud conviction must be vacated because the evidence produced by the Government at trial was insufficient to show that Mr. Newmark participated in a scheme to defraud the Walker brothers. He claims that the Government relied on two "buckets" of evidence, namely, (1) alleged misrepresentations by John Wight concerning Mr. Wight's lawyer status, and the resulting misimpression held by Thomas Walker; and (2) Mr. Newmark's communications with the Morgan Stanley brokerage firm concerning Mr. Newmark's supposed lawyer status. Mr. Newmark argues that the Government did not produce any evidence connecting Mr. Wight's conduct to Mr. Newmark's conduct. Furthermore, Mr. Newmark argues that under Pearlstein[2] and Dobson,[3] merely having a business relationship with Mr. Wight is not

---

[2] In Pearlstein, the Third Circuit Court of Appeals stated that to sustain a conviction for mail fraud, "the evidence must indicate that the defendants had knowledge of the fraudulent nature of the [enterprise] and wilfully participated in the scheme with the intent that its illicit objectives be achieved." 576 F.2d at 541. The "scheme" in that case involved the sale of distributorships for a direct-mail-marketing pen company. Although the Pearlstein court found that the scheme at issue was fraudulently conceived and operated, the court reversed the convictions of certain low-level salesmen, finding that they were not part of that overarching scheme. The court found that "although the defendants might have made fraudulent misrepresentations during the course of their individual sales presentations, the jury could not

enough to ground a conviction for wire fraud, and even if he lied to Morgan Stanley, he cannot be convicted for wire fraud absent other evidence linking him to the overarching charged scheme.

Mr. Newmark's motion on this issue will be denied. First, Mr. Newmark's motion asks the Court to "rethink a decision it has made" previously, which is an impermissible purpose of a motion for reconsideration. Armstrong, 2000 U.S. Dist. LEXIS 3119, at *9. Indeed, Mr. Newmark raised this identical Pearlstein/Dobson argument in his previous Rule 29 motion (and supplemental briefs), which the Court denied on April 4, 2008. The Court denies Mr. Newmark's motion as to this issue for this reason alone.

Secondly, Mr. Newmark's arguments invoking Pearlstein and Dobson are substantively unavailing. Unlike the defendants in Pearlstein and Dobson, who were low-level functionaries dispensed by the architects of the alleged schemes to do their dirty work, Mr. Newmark cannot

---

reasonably infer that the salesmen knew of the fraudulent purpose of the overall . . . scheme." Id. at 545. In sum, the court found that evidence showed that the principal architects of the scheme originated and initiated the scheme and developed its fraudulent aspects, but that there was no evidence that any of the low-level defendant-salesmen ever joined in the principals' scheme. Id. at 537-38.

[3] In Dobson, the court of appeals reversed a defendant's mail fraud convictions because the district court's jury instructions were erroneous. 419 F.3d at 241. The court of appeals analogized Pearlstein, noting that Dobson also involved "two layers of potential fraud or misrepresentation that do not necessarily interconnect: (1) Dobson's dubious sales presentations; and (2) the fraudulent . . . scheme charged in the Indictment." Id. at 238. The court stated that "Pearlstein is clear in teaching that proof of Dobson's participation in the latter is necessary to the prosecution's case and that proof of the former is only relevant to the extent it may constitute circumstantial evidence of the latter." Id. (citing Pearlstein, 576 F.2d at 544). The court of appeals reversed because the district court's jury instruction failed to make the necessary legal distinction between the defendant's fraudulent misrepresentations and the scheme itself, "and thus entirely omitted the prosecution's obligation to show that Dobson knowingly devised or participated in the broader . . . scheme as charged in the Indictment." Id.

5

argue that he acted as an unwitting pawn in scheme devised by other, more culpable or more senior offenders. In this case, Mr. Newmark was the "mastermind" of the scheme, so to speak. He owned the (non-law firm) entities that employed Mr. Wight and others. He devised the marketing strategy that targeted elderly individuals, such as the Walkers, with a view to convince those individuals to purchase high-priced annuity products from Mr. Newmark's companies. Mr. Newmark earned a significant commission on each sale his employees consummated. Morever, the Indictment charged Mr. Newmark with both devising and participating in the overarching scheme. In the Court's April 4, 2008 Memorandum, the Court extensively reviewed the evidence linking Mr. Newmark to the scheme, both as an orchestrator of the scheme and as a participant. See Newmark, 2008 U.S. Dist. LEXIS 27460, at *27-32 (discussing evidence that Mr. Newmark "devised" the scheme); id. at * 32-35 (discussing evidence that Mr. Newmark "participated" in the scheme). While the Court noted that the evidence presented by the Government arguably could be susceptible to competing inferences, the Court found that it was sufficient to ground a conviction for wire fraud. "The evidence need not unequivocally point to the defendant's guilt," United States v. Pungitore, 910 F.2d 1084, 1129 (3d Cir. Pa. 1990), and it "'does not need to be inconsistent with every conclusion save that of guilt if it does establish a case from which the jury can find the defendant guilty beyond a reasonable doubt.'" Gov't of the Virgin Islands v. Williams, 739 F.2d 936, 940 (3d Cir. 1984) (quoting United States v. Allard, 240 F.2d 840, 841 (3d Cir. 1957)).

For the same reasons provided in the Court's April 4, 2008 Memorandum, Mr. Newmark's motion for reconsideration as to Count One – under either Rule 29 or Rule 33 – will be denied. In this case, there is a "logical and convincing" nexus between the Government's

evidence and the guilty verdict as to Count One, Williams, 739 F.2d at 940 (citing United States v. Bycer, 593 F.2d 549, 550 (3d Cir. 1979)), and the court of appeals' holdings in Pearlstein and Dobson do not cause the Court to reconsider its April 4, 2008 decision on the basis now argued by Mr. Newmark.

## II.   FUNDAMENTAL FAIRNESS ISSUES CONSIDERED UNDER RULE 33

Secondly, Mr. Newmark argues that he is entitled to a new trial on Count One under Rule 33, for reasons that emerge from the Court's April 4, 2008 ruling. He argues that, as the Court ruled, the Government had insufficient evidence on Counts Two through Five to go to a jury. However, argues Mr. Newmark, because the Court reserved its decision on Counts Three through Five until after the jury reached a verdict, the Government was permitted to proceed to make "extremely prejudicial" closing arguments, based on evidence and charges that, had the Court entered a judgment for acquittal at the close of the evidence, would not have been part of the case. Moreover, Mr. Newmark argues that his Fifth Amendment right to testify was unfairly constrained by the fact that Counts Two through Five were sent to a jury.

### A.   "Prejudicial Spillover"

Count Five of the Indictment charged Mr. Newmark with making a false declaration under oath in violation of 18 U.S.C. § 1623(a). This charge stemmed from the Government's allegation that Mr. Newmark told Christopher Zeyer, an employee of Morgan Stanley, in a telephone conversation initiated by Mr. Newmark, that he (Mr. Newmark) was an attorney for the Walkers. In a deposition in a civil action brought by the Walkers against Mr. Newmark arising out of Mr. Newmark's sale of annuities to the Walkers, Mr. Newmark testified under oath that he had never represented himself as an attorney to the Walkers. This allegedly false deposition

statement was the basis for the Government's Count Five-false declaration charge. At trial, according to Mr. Newmark, the Government's attorney made numerous statements during closing and rebuttal arguments "absolutely hammer[ing] on the theme of Mr. Newmark 'lying' under oath in his civil deposition about the Zeyer call." (Def. Mot. 5.) The jury then found Mr. Newmark guilty as to Count Five.

The Court granted Mr. Newmark's Rule 29 motion as to Count Five, finding that the Government produced insufficient evidence that Mr. Newmark affirmatively misrepresented himself as a lawyer for the Walkers in his telephone conversation with Mr. Zeyer in order to ground a conviction under 18 U.S.C. § 1623(a). The Court also found that the Government failed to prove that Mr. Newmark's allegedly false statement was "material" to the underlying civil litigation initiated by the Walkers. Mr. Newmark now argues that the Government would not have been able to make these statements had Count Five not been part of the case when the Government presented its closing arguments. He argues that the Government's statements to the jury regarding Mr. Newmark's alleged "lies" caused "prejudicial spillover."

In determining whether "prejudicial spillover" occurs, courts consider "two inquiries: (1) whether the jury heard evidence that would have been inadmissible at a trial limited to the remaining valid count (i.e., "spillover" evidence); and (2) if there was any spillover evidence, whether it was prejudicial (i.e., whether it affected adversely the verdict on the remaining count)." United States v. Cross, 308 F.3d 308, 317 (3d Cir. 2002). The Third Circuit Court of Appeals stated:

> it is crucial to understand when prejudicial spillover may occur. When a defendant is convicted on two counts involving different offenses at a single trial and an appellate court reverses his conviction on one of them, prejudicial spillover

>    can occur only if the evidence introduced to support the reversed count would
>    have been inadmissible at a trial on the remaining count.

Id.  However, it is entirely sensible to conclude that a defendant is not "prejudiced" where the same evidence he complains about would have been admissible to prove both counts.  See id. ("If the evidence to prove the overturned count would have been admissible to prove the remaining valid count, the defendant was not prejudiced, and there is no need to consider whether the evidence influenced the outcome."); United States v. Eufrasio, 935 F.2d 553, 571 (3d Cir. 1991) (stating that a defendant was not prejudiced by the denial of his motion to sever RICO from non-RICO counts where "the same evidence" was admissible to prove both sets of counts).

In his motion for reconsideration, Mr. Newmark does not refer the Court to any particular evidence that the Government used to prove Count Five, which he could rightfully argue would not have been admissible to prove Count One.  Instead, Mr. Newmark emphasizes the Government's counsel's supposedly prejudicial comments during closing arguments referring to Mr. Newmark's "lies."  However, evidence (and counsel's comments) regarding Mr. Newmark's alleged "lies" would have been admissible to prove Count One, had the Government tried Mr. Newmark on Count One alone, because the thrust of the Government's Count One-case involved Mr. Newmark's (and Mr. Wight's) allegedly false misrepresentations about being a lawyer.  The "scheme" as charged in the Indictment, as described above, charged Mr. Newmark and Mr. Wight with committing certain acts "for the purpose of fostering the false impression that defendants were attorneys."  Even though the Court found that Mr. Zeyer's testimony was insufficient to ground the Count Five-false declaration charge, evidence of Mr. Newmark's alleged misrepresentation to Mr. Zeyer, supplemented by his facsimile communications to Mr.

Zeyer, would have been admissible as proof of Mr. Newmark's participation in the scheme to defraud the Walkers, as charged in Count One.  Therefore, the Court rejects Mr. Newmark's arguments as to "prejudicial spillover."

### B. Mr. Newmark's Fifth Amendment Right to Testify

Finally, Mr. Newmark argues that his Fifth Amendment right and ability to testify in his defense was effectively denied.  He argues that, given the holes in the Government's evidence as to Count Five, for him to testify while that Count was still viable would have risked resuscitating the Government's case because the Government could have cross-examined Mr. Newmark as to his conversations with Mr. Zeyer, his understanding of the deposition questions and answers that formed the basis for Count Five, his knowledge of the civil law suit brought by the Walkers and the importance or relevance (i.e, the "materiality") of his deposition statements to that litigation.  However, Mr. Newmark argues that if Count One had stood alone, he could have testified as to his research and due diligence regarding the Walkers' viable estate planning options, his commissions, certain details about the Morgan Stanley communications, and his contacts with, advice to, and positive relationship with, the Walkers in the years following the annuity transactions at issue.  Mr. Newmark cites no case law in support of his position here.

As an initial matter, the Court notes that Mr. Newmark did not file a pretrial motion to sever the various counts in the Indictment.  Had he done so, and expressed his concerns about his inability to testify fully at that time, it would lend some validity to Mr. Newmark's arguments now.  However, as noted above, the Government's evidence as to Count Five (and Count Three), namely, evidence surrounding Mr. Newmark's conversation and facsimile communications with Mr. Zeyer at Morgan Stanley, largely would have been admissible to prove Mr. Newmark's

participation in the fraudulent scheme charged in Count One of the Indictment.  Had Mr. Newmark taken the stand in his own defense, he would have opened himself up to cross-examination about his conversations with Mr. Zeyer, his motive in calling Mr. Zeyer, his motive in using letterhead from the Bohmueller Law Offices, instead of letterhead from one of the numerous companies that he owned and operated, to communicate with Mr. Zeyer, among other issues that could have been problematic for Mr. Newmark.  All of this evidence related to Mr. Newmark's participation in the "scheme" charged in Count One as well as the false declaration charged in Count Five, as to which Mr. Newmark subsequently was acquitted.  A defendant's decision whether to testify in a criminal proceeding typically will be a carefully-considered, often strategic choice wrought with potential advantages and disadvantages.  Mr. Newmark's decision, with the aid of counsel, not to testify in this case certainly entailed numerous potential complications.  However, Mr. Newmark has not convinced the Court that his decision to testify would have been any different had Count One stood alone as he contemplated possibly taking the witness stand.  Mr. Newmark's Rule 33 motion will be denied.

      An Order consistent with this Memorandum follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 06-447-1** |
| | : | |
| v. | : | |
| | : | |
| **BRIAN J. NEWMARK** | : | |
| Defendant | : | |

**O R D E R**

**AND NOW**, this 21st day of May, 2008, after consideration of Brian J. Newmark's Motion for Reconsideration (Docket No. 142), and the Government's responses thereto (Docket Nos. 143-144), for the reasons provided in the Memorandum accompanying this Order, **IT IS ORDERED** that Mr. Newmark's Motion for Reconsideration (Docket No. 142) is **DENIED**.

BY THE COURT:

S/Gene E.K. Pratter
Gene. E.K. Pratter
United States District Judge